15 So.3d 377 (2009)
Michael Shane McELROY, Plaintiff-Respondent
v.
CONTINENTAL CASUALTY COMPANY, Defendant-Applicant.
No. 43,868-CW.
Court of Appeal of Louisiana, Second Circuit.
June 24, 2009.
Rehearing Denied August 13, 2009.
*378 Gold, Weems, Bruser, Sues & Rundell by Edward E. Rundell, Heather M. Mathews, Alexandria, for Applicant.
Anthony J. Bruscato, Monroe, for Respondent.
Before STEWART, CARAWAY and DREW, JJ.
DREW, J.
The primary issue in this matter is whether a policy of automobile insurance issued by Continental Casualty Company provided underinsured motorist ("UM") coverage to Michael McElroy, who was driving a vehicle that was insured under the policy. Finding that the policy did not provide UM coverage, we reverse the judgment denying Continental's motion for summary judgment.

*379 FACTS
Michael McElroy, an employee of AmeriPride, was severely injured when the AmeriPride-owned van he was driving was involved in a collision with a truck driven by James Talbert. After settling with Talbert's liability insurer, State Farm, to that policy's limits, McElroy filed suit against Continental, which had issued a business auto coverage insurance policy to AmeriPride.
AmeriPride maintained a business auto policy from Continental with a coverage period of October 1, 2002, to October 1, 2003 ("first policy"), and then renewed coverage for the period of October 1, 2003, to October 1, 2004 ("second policy"). UM coverage was waived for the first policy when AmeriPride's representative properly completed a UM Bodily Injury Coverage Form ("form") in which coverage was rejected. AmeriPride's representative attempted to reject UM coverage for the next policy year when the policy was renewed. However, this rejection was ineffective because AmeriPride's representative did not initial the UM rejection selection on the form, but instead circled the number next to the selection. McElroy's accident took place during the second policy's coverage period, in September of 2004.
Continental filed a motion for summary judgment in which it argued that although the rejection of UM coverage for the second policy was invalid, the valid rejection of UM coverage for the first policy was still in effect because the second policy was a renewal policy. In support of its argument, Continental cited La. R.S. 22:680(1)(a)(i) and (ii).[1]
On June 15, 2007, the trial court rendered judgment denying the motion for summary judgment. In its reasons for judgment, the court noted that the intent of AmeriPride was ambiguous because the court could not determine the purpose of the later rejection attempt when the earlier rejection was still valid. The court added that it could not supply AmeriPride's intent in executing the second rejection but not properly initialing it. The court concluded that if a policyholder is not required to submit a new selection form, then the inclusion of a new selection form which is invalid for rejection purposes must create the presumption that UM coverage was not rejected.
On August 28, 2007, Continental filed an amended motion for summary judgment on the issue of UM coverage. Attached to the motion was an affidavit from Rojean Rada, AmeriPride's Secretary and General Counsel, who stated that it was AmeriPride's practice to reject UM coverage to the fullest extent allowed by law, and it was her intent in executing the form to reject such coverage. Also attached to the motion was the affidavit of Mark Wortsmann, underwriting director for Continental, who testified that it was AmeriPride's practice to reject UM coverage to the fullest extent allowed by law, and that it was the intention and understanding of the parties that AmeriPride rejected UM coverage in Louisiana in connection with the policy issued by Continental.
The trial court denied this amended motion for summary judgment. Continental applied for a supervisory writ with this court, which was denied. Judge Caraway dissented from the denial, writing that he would grant to reverse based on LeBlanc v. Guntenaar, 07-904 (La.App. 5th *380 Cir.3/25/08), 984 So.2d 136, writ denied, XXXX-XXXX (La.6/6/08), 983 So.2d 923, and Rashall v. Pennington, XXXX-XXXX (La. App. 3rd Cir.4/30/08), 982 So.2d 301, writ denied, XXXX-XXXX (La.10/10/08), 993 So.2d 1286. The supreme court then granted Continental's writ and remanded to this court for briefing, argument, and opinion. McElroy v. Continental Casualty Company, 2008-2259 (La.11/21/08), 996 So.2d 1097.

DISCUSSION

Rejection of UM Coverage
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. Duncan v. U.S.A.A. Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544; A.I.U. Ins. Co. v. Roberts, 404 So.2d 948 (La.1981). The requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. Duncan, supra.
La. R.S. 22:1295, which governs the issuance of uninsured motorist coverage in Louisiana, provides, in part, with emphasis added:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section.... Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates[.]
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage ... shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by *381 the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
The UM statute is to be liberally construed, and the liberal construction given the UM statute requires the statutory exceptions to coverage be interpreted strictly. Duncan, supra.
Although the policy number for the first policy was different from the number for the second policy, a change in policy numbers does not necessarily indicate a new policy has been issued rather than a renewal or substitute policy. See Lewis v. Lenard, 29,529 (La.App. 2d Cir.5/7/97), 694 So.2d 574. La. R.S. 22:1266(A)(5) defines the renewal of a policy as the issuance or delivery of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer. The first policy expired on October 1, 2003, and the second policy became effective on that date. The second policy contained the same liability limits as the earlier policy, and had the same insurer and named insured. Therefore, the second policy was a renewal policy, and under La. R.S. 22:1295(1)(a)(ii), a new form rejecting UM coverage was not required to be executed by AmeriPride. That AmeriPride attempted to execute a new form rejecting UM coverage with the renewal policy does not serve to make the earlier UM rejection ineffective, or make the later form supersede the earlier form.
The form clearly stated how AmeriPride could change its mind and accept UM coverage. In it signature section, the form executed in 2002 stated:
My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.
The submission of the improperly executed form in 2003 was not a written request for a change in UM coverage.
The above-cited language from the form is identical to language used in the UM coverage form in LeBlanc, supra. LeBlanc was injured when he was involved in an auto accident while in the course and scope of his employment with Boh Brothers Construction. LeBlanc contended that Boh Brothers' insurer, Illinois National, provided UM coverage under its business auto policy. When Boh Brothers first purchased the policy in 2000, its representative validly executed a UM coverage form rejecting UM coverage. The policy was renewed without changes over subsequent years; however, for the 2001 renewal, a new UM coverage form was executed in which Boh Brothers again rejected UM coverage. The 2001 waiver was invalid as the rejection selection was not initialed by Boh Brothers' representative. LeBlanc unsuccessfully argued that because the 2001 form was the more recent form, it governed the policy. Citing La. R.S. 22:680(1)(a)(i), the Fifth Circuit noted that the renewals of the policies did not change coverage. The Fifth Circuit additionally *382 noted that because the 2001 form was not a written notice to change UM coverage and did not nullify the 2000 form, the 2000 waiver of UM coverage remained in full force and effect at the time of the accident.
Whether an original valid UM waiver remained effective after the submission of an invalid waiver was also at issue in Rashall, supra. Rashall, who was injured in an auto accident while operating a truck owned by her employer, IESI, contended that IESI's insurer provided UM coverage to her. IESI's representative had executed a valid waiver of UM coverage under its insurance policy for 2003-2004, but when renewing the policy for 2004-2005, IESI's representative did not date the form requesting a waiver of UM coverage. Relying on La. R.S. 22:680(1)(a)(i) and (ii), the Third Circuit agreed with the insurer's argument that the valid UM rejection for the prior policy period effected a continued rejection of UM coverage in the renewal policy. The invalid rejection of UM coverage for the 2004-2005 policy was not a revocation of the earlier rejection. The Third Circuit did not consider the invalid rejection form to be the submission of a "new uninsured motorist selection form" as contemplated by La. R.S. 22:680(1)(a)(ii), but rather an improperly executed form reaffirming the original decision to reject UM coverage.
A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App. 2d Cir.8/21/96), 679 So.2d 477. Based on our review of the record, we conclude that the trial court erred in denying Continental's motion for summary judgment. The 2002 rejection of UM coverage was still effective at the time of McElroy's unfortunate accident.

Effect of Settlement
McElroy contends that Continental is barred from denying UM coverage because of the terms of a settlement agreement reached in the workers' comp action brought by McElroy against Continental as AmeriPride's workers' comp insurer. McElroy, AmeriPride, and Continental came to an agreement in December of 2005 that Continental would not intervene in the third-party lawsuit filed by McElroy against Continental arising out of his accident, and Continental would also waive any claims for reimbursement of any amounts paid to McElroy arising out of the September 2004 accident.
In the current lawsuit, Continental had filed a separate motion for summary judgment in which it argued that in the workers' comp settlement, McElroy had released all claims that he had against Continental. In opposition to its motion for summary judgment, McElroy offered his affidavit in which he stated that the settlement agreement did not include the release of all claims against Continental in the suit in which he was "seeking" UM coverage. McElroy further stated in his affidavit that Continental "was fully aware that Continental ... also provided a liability policy to AmeriPride and for the benefit of its employees that included, as Affiant contended, uninsured motorist coverage for Affiant[.]" There is no mention in the affidavit that Continental had conceded it provided UM coverage under AmeriPride's policy. McElroy's contention that the settlement agreement precludes *383 summary judgment is without merit.

Law of the Case
McElroy argues that Continental's second motion for summary judgment on the issue of UM coverage was barred by the principle of law of the case. That principle has been explained by this court as follows:
The "law of the case" principle is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial; (b) the conclusive effects of appellate rulings at trial on remand; and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur.
The law of the case applies to parties who were parties when the former decision was rendered and who thus had their day in court. Reasons for this doctrine include: to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue.
Citations omitted. Robideau v. Johnson, 31,770, pp. 3-4 (La.App. 2d Cir.3/31/99), 731 So.2d 955, 957-58, writ denied, 99-1564 (La.9/17/99), 747 So.2d 562.
The "law of the case" principle has no application when an appellate court reviews a ruling of the district court. Landry v. Aetna Ins. Co., 442 So.2d 440 (La. 1983).
Although the primary issue in both motions was the same (whether the earlier rejection of UM coverage remained effective), additional evidence was submitted in support of the second motion in order to address the trial court's concern that it could not discern AmeriPride's intent in submitting the form rejecting UM coverage with the renewal policy.
Other than the denial of Continental's writ, this court has not considered the issue of UM coverage. The only court that has done so is the trial court. McElroy complains that Continental did not seek supervisory review of the denial of its first motion for summary judgment. When the trial court denied that motion, it did not conclusively determine that UM coverage existed. Rather, the trial court's understanding as stated in its written reasons for judgment was merely that a genuine issue of material fact existed because the court could not determine "with any degree of authority that the rejection revert[ed] back to the previous year's form." The discretionary guide of law of the case is not applicable under these circumstances, and the trial court committed no error in considering the second motion for summary judgment.

CONCLUSION
At McElroy's costs, we reverse the judgment denying Continental's motion for summary judgment.
REVERSED.

APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, PEATROSS and DREW, JJ.
Rehearing denied.
NOTES
[1] La. R.S. 22:680 was renumbered as La. R.S. 22:1295 by Acts 2008, No. 415, § 1, effective January 1, 2009.