BROWN, Chief Judge,
dissents.
11 Finding no material issues of fact, the trial court granted defendant’s motion for summary judgment. Plaintiffs appealed. The submissions in support of the MSJ without question prove a valid rejection of UMBI coverage. The sole basis of plaintiffs’ case is that the official minutes for the BPPJ for the years 1995 through 2007 do not show the passage of a specific resolution authorizing William Altimus, or any other legal representative, to negotiate terms of coverage or execute any documents for the purchase of automobile liability insurance with St. Paul on behalf of the BPPJ, including UM coverage. That is their case. Defendant even admits that there are no minutes or express written authorization for Altimus to execute the liability insurance documents on behalf of the police jury. Thus, there are no material issues of fact and this matter should be an up or down vote.
In Stewart v. Edwards, 34,435 (La.App.2d Cir.04/04/01), 784 So.2d 740, this court held that a corporate executive’s authority to reject UM coverage may be established explicitly or implicitly. Specifically, we found that the affidavit testimony of the executive officer acknowledging his signature on the rejection form and his authority to execute such a form was sufficient proof of his authorization. In the case sub judice, Altimus’s deposition, as well as the affidavit and deposition of the BPPJ’s president, stated that Altimus was authorized to reject UMBI coverage and sign the appropriate form. Plaintiffs presented nothing to dispute this evidence.
Furthermore, after reviewing the excerpted minutes from the 1995 through 2006 police jury meetings, the majority opinion states:
|Jn September 1995, the police jury voted to renew its liability coverage. It obtained quotes for liability coverage from Montgomery and another agency in August 1996 and accepted Montgomery’s (St. Paul’s) quote. In July 1997, it voted to employ an insurance consultant to advise it on renewal of its insurance coverages, and on September 25, 1997, it accepted the consultant’s proposal to renew general liability coverages through Montgomery (St. Paul). In August 1998, the police jury approved a three-year schedule for obtaining quotes for its liability insurance coverages, with the year 2000 being the next year in which it was to obtain quotes.
It is clear that the BPPJ agreed to obtain insurance from St. Paul and re *725 newed that policy yearly thereafter. The BPPJ met each year and approved the payment of the insurance bill.' Altimus, who was both the administrator and an elected member of the police jury, signed the necessary documents each year, including the rejection of UMBI coverage.
La. R.S. 22:1295(l)(a)(ii), which governs the issuance of uninsured motorist coverage in Louisiana, provides, in part:
The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer. (Emphasis added).
| sIn McElroy v. Continental Cas. Co., 43,868 (La.App.2d Cir.06/24/09), 15 So.3d 377, 381, this court stated:
La. R.S. 22:1266(A)(5) defines the renewal of a policy as the issuance or delivery of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer. The first policy expired on October 1, 2003, and the second policy became effective on that date. The second policy contained the same liability limits as the earlier policy, and had the same insurer and named insured. Therefore, the second policy was a renewal policy, and under La. R.S. 22:1295(l)(a)(ii), a new form rejecting UM coverage was not required to be executed by Ameri-Pride. That AmeriPride attempted to execute a new form rejecting UM coverage with the renewal policy does not serve to make the earlier UM rejection ineffective, or make the later form supersede the earlier form.
Contrary to plaintiffs’ argument, the minutes of the BPPJ demonstrate that the police jury did agree to obtain insurance coverage from St. Paul, which in fact rejected UMBI coverage. Each year they reviewed the cost and paid the -bill. Equally obvious was that Altimus was authorized to execute the necessary documents.
A motion for summary judgment shall be granted if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.08/21/96), 679 So.2d 477. Considering the aforementioned, I would affirm the trial court’s granting of defendant’s MSJ.