WELCH, J.
laThis matter is before us again on appeal from a summary judgment granted in favor 'of the defendant, State Farm Fire and Casualty Company (“State Farm”), which dismissed the plaintiffs’" uninsured/underinsured motorist (“UM”) claims against State Farm. For reasons that follow, we reverse the judgment bf the trial court and remand for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
This suit arises out of a fatal automobile accident, and the underlying facts were set forth in our earlier opinion in this matter, Draayer v. Allen, 2013-0051 (La.App. 1st Cir.4/9/14), 2014 WL 1396649 (unpublished ) (“Draayer (I) ”) as follows:
On November 19, 20Ó9, an automobile accident occurred involving a 2007 Dodge Caravan owned by Jerry Draayer and driven by his wife, Lois V. Draayer, and ,a 2006 Yukon Denali owned by Melvin D. Allen and driven- by Russell G. *80 Allen. The accident occurred when the Allen vehicle, which was traveling northbound on Interstate 55 in Pike County, Mississippi, crossed the median and collided head-on with the Draayer vehicle, which was traveling southbound on the interstate. As a result of the injuries sustained in this accident, Lois Draayer died.
The plaintiffs are Jerry Draayer, the surviving spouse of Lois Draayer, and Leah D. McDowell, Sarah D. Milligan, and Martha D. Duncan, the surviving children of Lois Draayer. On November 17, 2010, the plaintiffs filed a petition for damages, naming as defendants: Russell Allen; Progressive Insurance Company, Russell Allen’s automobile liability insurer; and State Farm, which allegedly provided UM coverage to Lois Draayer through their personal liability umbrella policy (“PLUP”).
On April 11, 2011, State Farm filed a motion for summary judgment, contending that it was entitled to be dismissed from the plaintiffs’ lawsuit, because Lois Draayer had rejected UM coverage under the PLUP. After a hearing, the trial court granted the motion and dismissed the plaintiffs’ claims against State Farm.
On appeal, this court reversed the judgment of the trial court because there were genuine issues of material fact as to whether there was a lawful and valid rejection of UM coverage and whether Louis Draayer knowingly made an informed, meaningful rejection of UM coverage. Draayer (I), 2013-0051 at p. 10. lain reaching this conclusion, this court determined that State Farm had met its initial burden of proving that the UM selection form for the PLUP, which was signed by Lois Draayer on March 23, 2009, was properly completed and signed in accordance with the requirements of Duncan v. U.S.A.A. Insurance Company, 2006-363 (La.11/29/06), 950 So.2d 544, 547,[1] thereby creating a rebuttable presumption that Lois Draayer knowingly rejected UM coverage. Draayer (I), 2013-0051 at p. 8. However, this court further determined that the plaintiffs offered evidence sufficient to establish that they could rebut the presumption that Lois Draayer knowingly rejected UM coverage when she signed the March 23, 2009 UM selection form and initialed her selection. Id. Specifically, the evidence offered by the plaintiffs established that State Farm breached its affirmative duty to place the insured in a position to make an informed decision regarding UM coverage by requiring Lois Draayer to sign the March 23, 2009 UM selection form as a condition of maintaining coverage under the PLUP, thereby depriving her of her statutory right to have UM coverage equal to the bodily injury limits in her insurance policy. Draayer (I), 2013-0051 at pp. 8-9. Accordingly, this court determined that summary judgment was inappropriate and remanded the matter for further proceedings. Draayer (I), 2013-0051 at pp. 10.
*81 Following this court’s decision in Draayer (I) that there were unresolved issues of material fact with respect to the validity of the March 23, 2009 UM selection form rejecting UM coverage, on remand, State Farm filed another motion |4for summary judgment, arguing that it was entitled to be dismissed from the plaintiffs’ lawsuit on the basis of an earlier UM selection form rejecting UM coverage, which was signed by Lois Draayer and dated June 8, 2004. The plaintiffs opposed the motion for summary judgment, and after a hearing on February 9, 2015, the trial court granted the motion for summary judgment, and dismissed the plaintiffs’ claims against State Farm. A judgment in conformity with the trial court’s ruling was signed on February 20, 2015, and it is from this judgment that the plaintiffs have appealed.[2]
LAW AND DISCUSSION

Summary Judgment

A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits admitted for purposes of the motion for summary judgment, show there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).[3] On a motion for summary judgment, if the issue before the court is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of Material fact is on the party bringing the motion. La. C.C.P. art. 966(C)(2); Buck’s Run Enterprises Inc. v. MAPP Construction, Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. On appeal, in determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that governs the trial court’s determination of whether summary judgment |fiis appropriate. Green v. State Farm Mutual Automobile Insurance Company, 2007-0094 (La.App. 1st Cir.11/2/07), 978 So.2d 912, 914, writ denied, 2008-0074 (La.3/7/08), 977 So.2d 917.
An insurer seeking- to avoid coverage through summary judgment bears the burden of proving that some provision or exclusion applies to preclude- coverage. Halphen v. Borja, 2006-1465 (La.App. 1st Cir.5/4/07), 961 So.2d 1201, 1204, writ denied, 2007-1198 (La.9/21/07), 964 So.2d 338. The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Green, 978 So.2d at-914. Summary judgment declaring a lack of coverage under an insurance policy.may not be rendered unless-there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Id.

*82
Rejection of UM Coverage

Louisiana Revised Statutes 22:1295(l)(a)(i), provides that no policy of automobile liability insurance “shall be delivered or issued for delivery in this state” without UM coverage; however, UM coverage “is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage in the manner provided in [La. R.S. 22:1295(1)(a)(ii) ].” Louisiana Revised Statutes 22:1295(1)(a)(ii) provides that the “rejection, selection of lower limits, or selection of economic-only [UM] coverage shall be made only on a form prescribed by the commissioner of insurance” and that “[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected [UM] coverage.” In addition, La. R.S. 22:1295(l)(a)(ii) provides that the form signed by the insured “which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the Llife of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitution, or amended policy is issued to the same named insured by the same insurer”; however, “[a]n insured may change the original [UM] selection or rejection on a policy at any time during the life of the policy by submitting a new [UM] selection form to the insurer on the form prescribed by the commissioner of insurance.”
Under La. R.S. 22:1295, UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected.[4] See Duncan, 950 So.2d at 547. The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Id. The UM statute is to be liberally construed, and thus, exceptions to coverage are to be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable, and the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Id.
Therefore, as in Draayer (I), on the motion for summary judgment, it was State Farm’s burden of proof to establish that it had a properly completed and signed UM coverage selection form, as prescribed by the commissioner of insurance, in which the named insured in the policy knowingly rejected such coverage. According to the undisputed evidence in the record, State Farm issued a PLUP to Jerry and Lois Draayer, identified as policy number 18-EM-9574-8. The policy was first issued in June 2004, was renewed each year thereafter, and was in 17effect on November 19, 2009, the date of Lois Draayer’s fatal accident.[5] A UM selection form for the PLUP was signed by Lois Draayer on June 8, 2004, the date she applied for the policy. On the UM selection form, the initials “LVD” were placed next to option 5, which provided: “I do not want [UM] Coverage. I understand that I will not be compensated through [UM] *83 Coverage for losses arising from an accident caused by an uninsured/underinsured motorist.” ■ The signature “Lois V. Draayer” was placed on the line for .“Signature of a Named Insured or his/her Legal Representative,” and “Lois Y. Draayer” was handwritten in the line for “Name of a Named Insured or his/her Legal Representative.” “6-08-04” was handwritten on the line for “Effective Date,” and “18-1370”' was handwritten on the line for “Agent’s Code” and the line for policy number was blank.[6]
|Jn opposition to the motion for summary judgment, the plaintiffs argued that State Farm was not entitled to summary judgment because this court already determined, in Draayer (I),. that there were genuine issues of material fact as to whether the March 23, 2009 UM selection form was a lawful and valid rejection of UM coverage, and since the March 23, 2009 UM selection form replaced and supplanted the June ’ 8, 2004 UM selection form by virtue of State Farm’s own actions and representations, State Farm cannot now “revive” the June 8, 2004 UM form “out of convenience.” In support of this contention, the plaintiffs point-to the deposition testimony of James “Jim” Crane, the Draayers’ State Farm agent, and his em-' ployee, Barbara Faircloth. According to this testimony, Lois Draayer executed the initial' June 8, 2004 ■ UM selection- form rejecting UM coverage in conjunction with her application for the policy. On March 11, 2009,' during the policy period, Jim Crane’s State Farm agency sent Lois Draayer another UM selection form in the mail. According to Barbara Faircloth’s testimony, “everybody” that had a State *84 Farra umbrella policy from State Farm agent Jim Crane, including Lois Draayer, was told that their umbrella policy would not be renewed unless a new UM selection form was submitted.[7] Following Lois Draayer’s receipt of this letter, she went to Jim Crane’s State Farm agency office, Land in the presence of Barbara Faircloth, Lois Draayer executed the March 23, 2009 UM selection form rejecting UM coverage.[8]
In addition, the plaintiffs contend that the June 8, 2004 UM selection form was invalid under Duncan because the evidence established that Barbara Faircloth, rather than Lois Draayer, was the person who actually filled in the date, the agent’s code, and printed Lois Draayer’s name on the UM selection form; that the policy number was stamped on the application after Lois Draayer signed the form; and that Lois Draayer only signed the form and initialed her selection. In other words, Lois Draayer, personally, only completed two of the six tasks required of her by Duncan.[9] In addition, the plaintiffs argue that State Farm could not prove that the form was completed before it was signed by Lois Draayer because Barbara Faircloth could not specifically remember any details regarding Lois Draayer’s execution of the June 8, 2004 UM selection form.
In response to the plaintiffs’ argument, State Farm contends that it is entitled to seek summary judgment based on the earlier UM selection form, i.e., the June 8, 2004 UM selection form rejecting UM coverage, because a subsequent invalid rejection of UM coverage does not render an earlier rejection ineffective or supersede an earlier rejection of UM coverage. In support of their argument, State Farm relies on Hughes v. Zurich American Insurance Company, 2013-2167 (La.App. 1st Cir.8/20/14), 153 So.3d 477, writ denied, 2014-2220 (La.1/9/15), 157 So.3d 1107.
In Hughes, 153 So.3d at 478, the plaintiff, Lloyd Hughes, an employee of Dupre Logistics, LLC, was injured when the truck he was driving was rear-ended by a vehicle driven by Robert Coleman. Hughes settled his claim with Coleman’s liability insurer for its policy limits, and then sued Zurich American Insurance | ^Company, asserting that Zurich provided his employer, Dupre, with UM coverage for the truck that he was driving at the time of the accident. Zurich filed a motion for summary judgment contending that it did not provide Dupre with UM coverage on the vehicle driven by Hughes at the time of the accident. In support of the motion, Zurich relied on affidavits, the insurance policy, and several UM selection forms in support of its assertion that it provided liability coverage to Dupre since October 2005, but Dupre had always rejected UM coverage. The plaintiff did not dispute that Dupre validly rejected UM coverage when it originally secured the *85 policy in October 2005, or that it validly rejected UM coverage in subsequent UM selection forms on renewal policies dated October 1, 2006, September 28, 2007, and August '28, 2008. However, Hughes argued that Dupre did not waive UM coverage on the fourth renewal for the policy period from October 1, 2009 through October 1, 2010 because the representative for Dupre failed to place his initials in the appropriate blank for rejecting UM coverage on the UM selection form. Thus, Hughes argued that the representative’s failure to place his initials on the form evidenced the intent to secure UM coverage on behalf of Dupre. The trial court granted Zurich’s motion for summary judgment on the basis that the initial rejection of coverage was sufficient to show the intent to reject UM coverage on the renewal policies. Hughes, 153 So.3d at 478.
On appeal, this court affirmed the decision of the trial court. Hughes, 153 So.3d at 481. In doing so, this court determined that Dupre validly rejected UM coverage when the liability policy was initially secured; . and, the fact that Dupre attempted to execute a new UM selection form rejecting UM coverage, with its fourth renewal policy, when there was no requirement that it do so, did not make the earlier UM rejection ineffective or make the later UM selection form supersede the earlier UM selection form. Hughes, 153 So.3d at 480. See La. R.S. 22:1295(l)(a)(ii) (providing-that the UM selection form signed by the insured or |nhis legal representative which initially rejects coverage shall remain valid for the life of the policy and shall not require the completion of a new UM selection form when a renewal policy is issued to the same named insured by the same insurer.) In reaching this conclusion, this court relied heavily on the factually similar case of McElroy v. Continental Cas. Co., 43,868 (La.App. 2nd Cir.6/24/09), 15 So.3d 377. See Hughes, 153 So.3d at 480.
In McElroy, 15 So.3d at 379, the plaintiff, who was injured in an accident while driving his. employer’s vehicle, sought to recover under UM benefits from his employer’s business automobile coverage insurer. The employer had executed a valid UM selection form rejecting UM coverage when it initially secured the policy. The employer attempted to reject UM coverage for the next policy year when the policy was renewed, but the rejection was ineffective because the employer’s representative did not initial the UM rejection on the selection form, and instead, circled the number next to the selection. The second circuit noted that because the second policy was a renewal, a new UM selection form rejecting UM coverage was not required to be executed. And, because the employer attempted to execute a new UM selection form rejecting coverage with the renewal policy, that did not serve to make the earlier UM selection form rejecting UM coverage ineffective or make the later form supersede the earlier form. Accordingly summary judgment in favor of the insurer, concluding that its policy did not provide UM coverage, was warranted. McElroy, 15 So.3d at 379-381.
We find that both Hughes and McElroy are distinguishable from the present ease. In both Hughes and McElroy, there was no dispute that the insureds had validly executed the initial UM selection forms rejecting UM coverage. Since those UM selection forms were valid for the life of the policy, a new UM selection form rejecting coverage was not required to renew the policy. In this case, the evidence un-disputedly established that-in March 2009 (during the policy period)' 112State Farm required its insured, Lois Draayer, to execute a new UM selection form and that the new UM. selection form was not executed *86 in conjunction with the renewal of the policy. In addition, unlike the plaintiffs in Hughes and McElroy, the plaintiffs herein have always disputed whether Lois Draayer validly rejected UM coverage when she signed the initial June 8, 2004 UM selection form.
Notably, our decision in Draayer (I) focused solely on the UM selection form executed by Lois Draayer on March 23, 2009, although the record had established that Lois Draayer had executed the June 8, 2004 UM selection form when she.applied for the PLUP. Unlike the insurers in Hughes and McElroy that'urged the validity of the initial UM selection in their motions for. summary judgment, in Draay^ er (I), State Farm did not seek dismissal from this suit on the basis of the initial UM selection form, and in fact, it did not even mention the June 8, 2004 UM selection form in its motion for summary judgment. It was the plaintiffs, who, in opposition to that.summary judgment, brought forth the June 8, 2004 UM selection form and argued that it was “fatally flawed” because it. was not executed in compliance with Duncan (rec 155 in 2013-0051). And, in response to the plaintiffs’ argument, State Farm argued that the validity of the June 8, 2004 UM selection form was a “red herring” and was “irrelevant” to its summary judgment, because Lois Draayer had executed the March 23, 2009 UM selection form in compliance with Louisiana law. (rec 84 in 2013-0051).
We also note that it was only after this court, determined, in Draayer (I), that there were genuine issues of material fact with respect to the validity of the March 23, 2009 UM selection form, did State Farm even seek summary judgment on the basis that the first UM selection form (the June 8,2004 UM selection form) was valid. Essentially, State Farm’s argument is that' the March 23, 2009 UM selection form (and, hence our decision in Draayer (I)) is irrelevant because the initial form is still valid. As to this issue, we find Alexander v. Estate of McNeal, 2010-66 (La.App. 3rd Cir.6/30/10), 44 So.3d 338, writ denied, 2010-1807 (La.10/29/10), 48 So.3d 1093 to be both instructive and persuasive.
In Alexander, 44 So.'3d at 338-339, there was a head-on collision between two trucks wherein both truck drivers — Maurice McNeal and Marvin Dupar — were killed as a result of the accident. The vehicle driven by Maurice McNeal was owned by Tyler Timber, Inc. and insured by Praetorian Specialty Insurance Company. Marvin Dupar owned the vehicle he was driving, and at the time of the accident, he had a policy of automobile liability insurance with Republic Vanguard Insurance Company. As a result of the accident, suits were brought by the survivors of Mr. Du-par.
The record established that Mr. Dupar signed two UM -.selection forms rejecting UM coverage under his Republic policy— one on April. 30, 2007 and then another on July 31, 2007. Alexander, 44 So.3d at 339. Neither form contained- a policy number, even though both forms .had a blank for a policy number. Although the parties disagreed on whether there was a policy number in effect on April 30, 2007 (the date of the initial UM selection form), it was undisputed that there was a policy number in effect on July 31, 2007 (the date of the subsequent UM selection form). Republic filed a motion for partial summary judgment arguing that there was no policy number in .effect on April 30, 2007, and that the April 30, 2007 UM selection form was not required to contain a policy number.. Republic further argued that since the April 30, 2007 UM selection form- was valid, the second (July 31, 2007) UM selection form was legally irrelevant. The survivors of Mr. Dupar filed their own motion *87 for summary judgment on the grounds that neither UM selection form contained the policy number, as required by Duncan; thus, neither UM selection form was valid. Alternatively, they claimed that if it was determined that the first UM selection form .did not require a policy number, the result would be the same because the second (July 31, 2007) UM selection form | Usuperceded the first (April 30, 2007) UM selection form, and since the second UM selection form did not contain a policy number, it too was not valid.
The trial court granted the motion for summary judgment filed by the survivors of Mr. Dupar and denied Republic’s motion, finding that the July 31, 2007 UM selection form replaced or superceded the April 30,2007 form, and because there was no policy number on the July 31, 2007 UM selection form, the rejection of UM coverage therein was invalid. In reaching the determination that the July 31, 2007 UM selection form replaced or superceded the April 30, 2007 UM selection form, the trial court was particularly persuaded by the fact that the insurer — the drafter of,the policy — compelled or required its insured to come back and sign the subsequent July 31, 2007 UM selection form. The trial court reasoned that the “second document ha[d] to stand for something, it ha[d] to mean something” and that the insurer “obviously ... wanted the second form to have the full force of law.” Alexander, 44 So.3d at 340-341.
The third circuit, agreeing with the trial court’s well-reasoned judgment, held that “[t]he insurer cannot pick and choose which one of the rejection forms to enforce and required Mr. Dupar to sign for both. There are legal consequences flowing from signed documents; and certainly Republic, as the drafter and presenter of the July 31, 2007 '[UM selection] form, should be held to those consequences.” Alexander, 44 So.3d at 341.[10] In addition, the third circuit distinguished McElroy on the basis that it involved a policy renewal, and thus, the initial UM selection form rejecting UM coverage remained valid, whereas there was nothing in that record to indicate that Mr. Dupar was called in to sign a renewal. Accordingly, the third circuit affirmed the trial court’s ruling that the July 11B31, 2007 UM selection form superseded the April 30, 2007 UM selection form, and since that UM selection form did not contain a policy number, which was in existence at the time, it was legally insufficient under Duncan to reject UM coverage.
We agree with the reasoning of the third circuit in Alexander. The evidence established that Lois Draayer signed a UM selection form that was dated June 8, 2004 — the date that she applied for’’the PLUP. Several years later, State Farm required Lois Draayer to execute a new UM selection form-, which resulted in the March 23, 2009 UM selection form. State Farm then sought to enforce that UM selection form by means of a summary judgment, and only after it was determined that there were issues of fact as to whether that UM selection form validly rejected UM coverage did State Farm then seek to enforce the earlier UM selection form. Under the holding of Alexander, State Farm is not entitled to pick and choose which one of the selection forms to enforce. See also La. R.S. 22:1295(l)(a)(ii) *88 (providing that although the initial UM selection form is valid for the life of the policy, this initial selection may be changed by the submission of a new UM selection form). The March 28, 2009 UM selection form signed by Lois Draayer was a legal document with legal consequences. State Farm, as the insurer that presented Lois Draayer with the UM selection form and required Lois Draayer to execute the March 23, 2009 UM selection form, should be held to the legal consequences of failing to do its job of having its insured execute the UM selection form in accordance with applicable law. State Farm previously chose to enforce the March 23, 2009 UM selection form on the basis that it had legal consequences, and it is now bound by those legal consequences, including our decision in Draayer (I) that there were issues of fact as to its validity. State Farm is not entitled to “a second bite at the apple” by resurrecting the earlier June 8, 2004 UM form when a subsequent UM selection form was executed during the policy period, p (¡Allowing State Farm to do so would lead to absurd consequences, defies logic and common sense, and more importantly, is contrary to both the provisions of La. R.S. 22:1295(l)(a)(ii) and the strong public policy embodied in the UM statute, which is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. See Duncan, 950 So.2d at 547.
Therefore, based on our de novo review of the record and the applicable law, we find that State Farm has failed to meet its burden of showing that there is no genuine issue as to material fact and that it is entitled to judgment as a matter of law. To the contrary, the material facts regarding the circumstances surrounding the execution of the March 23, 2009 UM selection form by Louis Draayer as required by State Farm, established that the March 23, 2009 UM selection form superseded the June 8, 2004 UM selection form.[11] Accordingly, summary judgment in favor of State Farm and dismissing the plaintiffs’ claims against State Farm was inappropriate and we reverse that portion of the trial court’s judgment.
CONCLUSION
For all of the above and foregoing reasons, the February 20, 2015 judgment of the trial court is reversed insofar as it granted summary judgment in favor of State Farm and dismissed the plaintiffs’ claims against State Farm. In all other respects, the judgment is affirmed.
All costs of this appeal are assessed to the defendant, State Farm Fire and Casualty Company.
REVERSED IN PART; AFFIRMED IN PART; ANSWER TO APPEAL DENIED.
Before: WHIPPLE, C.J., PETTIGREW, and WELCH, JJ.

. The judgment of the trial court also granted the plaintiffs' motion to strike the affidavits of Barbara Faircloth and Jan Combs, which was urged by the plaintiffs in conjunction with their opposition to the motion for summary judgment. State Farm has answered the appeal seeking reversal of the trial court’s ruling. For further discussion of the issue, see footnote 6 herein.

. Louisiana Code of Civil Procedure article 966 was amended and reenacted by 2015 La. Acts, No. 422, § 1, effective January 1, 2016. The amended version of La. C.C.P. art. 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act. Therefore, we refer to the former version of the article in this case. See 2015 La. Acts, No. 422, •§§ 2 and 3.

. The UM statute is applicable to umbrella policies. See Southern American Ins. Co. v. Dobson, 441 So.2d 1185, 1190 (La.1983) (on rehearing); Tugwell v. State Farm Ins. Co., 609 So.2d 195, 199 (La.1992).

. The policy period for the policy in effect at the time of the accident was June 21, 2009, through June 21, 2010. However, the policy was apparently cancelled on June 10, 2010 by Jerry Draayer following the death of Lois Draayer.

. In support of the motion for summary judgment, State Farm also offered the affidavits of Jan Combs, who is' employed by State Farm in the capacity as Underwriting Team Manager, and Barbara Faircloth, an employee of the Draayers’ State Farm Agent, James ("Jim”) Crane. In conjunction with the plaintiffs' opposition to the motion for summary judgment, the plaintiffs moved to strike these affidavits on the basis that the affidavits were not based upon the affiants’ "personal knowledge” and because they contained conclusory. allegations. See La. C.C.P. art. 967 (providing that affidavits supporting and opposing motions for summary judgment shall be made on "personal knowledge.”) The trial court granted the motion to strike and State Farm has answered this appeal seeking a reversal of that ruling,
The evidence offered by the plaintiffs in support of -its motion to strike established that Jan Combs was not present when Lois Draayer executed either the March 23, 2009 or the ■ June 8, 2004 UM selection forms and that she did not even know Lois Draayer. Hence, she cannot offer any opinion relative to the execution of either UM selection form based on her personal knowledge. With regard to Barbara Faircloth, she could not remember any of the specific details regarding Lois Draayer's execution of the June 8, 2004 UM selection form and was only able to explain what her standard practice was when insureds executed UM selection forms. Likewise/Barbara Fair-cloth is unable to provide any opinion relative to the execution of the June 8, 2004 UM selection form based on "personal knowledge.” Accordingly, the trial court did not abuse its discretion in granting the motion to ‘Strike the affidavits. See Foumerat v. Farm Bureau Ins. Co., 2011-1344 (La.App, 1st Cir.9/21/12), 104 So.3d 76, 83, writ denied. 2012-12148 (La.11/21/12), 102 So.3d 59.(find-ing no abuse of discretion in the trial court’s decision to deny a motion to strike affidavits), and In Re Succession of Wagner, 2008-0212 (La.App. 1st Cir.8/8/08), 993 So.2d 709, 716 (that generally, a trial court is granted broad discretion in its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion.) Furthermore, we find that even if the motion to strike the affidavits should not have been granted, the trial court’s action resulted in harmless error, as nothing in either affidavit was relied upon by either the trial court or by this court in considering the merits of Státe Farm's motion for summary judgment. Therefore, we affirm the judgment of the trial court and deny State Farm’s answer to appeal.

.Barbara Faircloth further testified that she believed the execution of a new UM selection form was necessary because the State of Louisiana had changed the form. But cf. La. R.S. 22:1295(l)(a)(ii) (providing that a UM selection form which rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy) and Bulletin No. 08-02 of the Commissioner of the Louisiana Department of Insurance (providing that the new UM selection form was only required for new insurance policies issued on or after January 1, 2010 and that a properly completed and signed UM selection form executed prior to January 1, 2010 would remain valid for the life of the policy unless otherwise modified).

. Although, as determined in Draayer (I), 2013-0051 at p. 9, the information provided by Barbara Faircloth to Lois Draayer was incorrect and contrary to Louisiana law.

. See footnote 1.

. See also Hughes, 153 So.2d at 481 (Petti-grew, J., dissenting) (noting that a UM selection form rejecting UM coverage "is a legal document that has legal consequences if properly executed" and although the insurer "did not need, nor were they obligated, to get is insured to execute another [UM selection form] for the renewal period ... [it] did get its insured to execute another form” and “[b]y doing so, that document had legal consequences.”)

. Having determined that State Farm has failed to show that the June 8, 2004 UM selection form is applicable to the plaintiffs’ UM claims, we pretermit consideration of whether the June 8, 2004 UM selection form was executed in accordance with the requirements of Duncan, 950 So.2d at 551. See footnote 1.