# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-699


**METALS USA PLATES & SHAPES SOUTHEAST, INC.**

**C/W O'NEAL STEEL LOUISIANA, LLC**

**VERSUS**

**LOUISIANA DEPARTMENT OF REVENUE**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
BOARD OF TAX APPEALS
NO. 9342-D
HONORABLE TONY GRAPHIA (ret.), CHAIRMAN

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Van H. Kyzar, and Candyce G. Perret, Judges.


**AFFIRMED.**

**Nicole Gould Frey**
**David R. Cassidy**
**Breazeale, Sachse & Wilson, L.L.P.**
**P. O. Box 3197**
**Baton Rouge, LA 70821-3197**
**(225) 387-4000**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **O'Neal Steel Louisiana, LLC**

**Aaron Long**
**Brandea P. Averett**
**Antonio C. Ferachi**
**Adrienne Quillen**
**Louisiana Department of Revenue**
**P. O. Box 4064**
**Baton Rouge, LA 70821-4064**
**(225) 219-2080**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Louisiana Department of Revenue**

**KYZAR, Judge.**

O'Neal Steel Louisiana, LLC (O'Neal), appeals from the Board of Tax Appeals' judgment, which held that certain commercial purchases of fuels and gases were not excluded from sales tax under La.R.S 47:301(10)(x) and dismissed O'Neal's refund claim for $3,423.33. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

O'Neal, which has its principal place of business in Lafayette, Louisiana, is engaged in the metals business, including welding and metals fabrication. O'Neal purchased, and paid sales tax on, welding gases that are used as shielding gases in the welding process. O'Neal filed a refund claim with the Louisiana Department of Revenue (LDR) for sales taxes it paid for the period beginning January 2011 through February 2014, claiming various exemptions such as the Manufacturing, Machinery, and Equipment exemption and the Fuels exemption, which it claims includes welding gases. LDR allowed most of the refund claimed but denied the portions for sales taxes paid on the purchase of welding gases. O'Neal then appealed the ruling of LDR to the Board of Tax Appeals[1] (the Board). At the hearing, O'Neal submitted evidence that sales taxes were in fact paid on O'Neal's purchases of welding gases. The parties stipulated that O'Neal filed a $10,066.07 refund claim for sales taxes paid, of which $9,250.32 was initially denied, but that LDR thereafter allowed another $2,393.42. The parties further stipulated the sum of $3,423.33 in sales taxes paid on fuel for which O'Neal continued to claim entitlement to a refund. The Board held that commercial purchases of fuels and

---

[1] The Board consolidated this matter with another taxpayer, Metals USA Plates & Shapes Southeast, Inc., which had an identical dispute except for the amount of the refund claimed. That matter has likewise been appealed but in a different appeal venue.

gases were not excluded from tax under La.R.S. 47:301(10)(x) and dismissed

O'Neal's refund claim for the $3,423.33.  This appeal followed.

O'Neal asserts the following assignments of error:

1. It was reversible error to judicially repeal 2008 La. 2nd Ext. Sess. Act 1 (Act 1), which excluded all commercial off-highway fuel purchases from tax, because simultaneous legislation, 2008 La. 2nd Ext. Sess. Act 9 (Act 9), excluded only commercial purchases of butane and propane fuels from tax.

2. The trial court erred in finding Acts 1 and 9 are in conflict.

3. The trial court erred in failing to give effect to all laws passed by the legislature.

4. It is reversible error to tacitly repeal Act 1 without any attempt to harmonize it with Act 9.

**OPINION**

The resolution of this dispute hinges entirely on the interpretation of two acts passed by the Louisiana Legislature in the same session, each applicable to the purchase of the welding gases at issue here and certain exemptions from sales taxes for those purchases.  Act No. 1 of the 2008 Second Extraordinary Session, excluded from tax any fuel or gas purchased, and Act No. 9 of the same session, exempted only butane and propane gases.  Each act attempted to amend and reenact the same provision, La.R.S. 47:301(10)(x).  The Board found that the latter act tacitly repealed the first and denied O'Neal's claim based upon that finding.  Thus, the sole issue presented to the Board was a legal one: whether the O'Neal purchases of welding gases were exempt from sales tax under La.R.S. 47:301(10)(x).

Although a deferential standard of appellate review is applied to the factual conclusions of an administrative tribunal such as the Board, the same is not true for issues of law.  "Questions of law, such as the proper interpretation of a statute, are reviewed by [an appellate] court under the de novo standard of review." *Land v.*

2

*Vidrine*, 10-1342, p.4 (La. 3/15/11), 62 So.3d 36, 39. "On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record." *State, Through La. Riverboat Gaming Comm'n v. La. State Police Riverboat Gaming Enf't Div.*, 95-2355, p. 5 (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 319. "Appellate review of a question of law involves a determination of whether the lower court's interpretive decision is legally correct." *Johnson v. La. Tax Comm'n*, 01-964, p. 2 (La.App. 4 Cir. 1/16/02), 807 So.2d 329, 331, *writ denied*, 02-445 (La. 3/8/02), 811 So.2d 887.

> On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. *See* La.Const. art. 5, § 5(C); *Donnell v. Gray*, 215 La. 497, 41 So.2d 66, 67 (1949).

*Eicher v. La. State Police, Riverboat Gaming Enf't Div.*, 97-121, p.6 (La.App. 1 Cir. 2/20/98), 710 So.2d 799, 803, n.5, *writ denied*, 98-780 (La. 5/8/98), 719 So.2d 51.

Prior to 2008, the law in question, La.R.S. 47:301(10)(x) (emphasis added), provided that "[f]or purposes of the sales and use tax imposed by the state. . . the terms 'retail sale' or 'sale at retail' shall not include the sale or purchase by a consumer of any fuel or gas, including but not limited to butane and propane, **for residential use by the consumer.**" During the 2008 Second Extraordinary Session of the Louisiana Legislature, law makers attempted to expand the sales tax exclusion for gases found in La.R.S. 47:301. Act No. 1 and Act No. 9 were both introduced in the 2008 Second Extraordinary Session and both revised La.R.S. 47:301(10)(x); however, the revisions enacted by each Act arguably contradict each other.

It is well established that in the case of conflict between two acts of the legislature, it is the last expression of legislative will that controls. *State v. St. Julian*, 221 La. 1018, 61 So.2d 464 (1952); *Board of Ethics In Re Davies*, 10-1339 (La.App. 1 Cir. 12/22/10), 55 So.3d 918. "There is no other reasonable rule that could be applied to conflicting statutes passed at the same session of the legislature than to hold that the later expression of the legislative will must govern." *St. Julian*, 61 So.2d at 466. Therefore, to determine whether O'Neal was exempt from paying sales tax on its purchases, we must first ascertain whether the two acts are irreconcilable.

On appeal, O'Neal asserts that it was error for the Board to find that the two acts contradict each other. It argues that the two acts can be read together and harmonized as was done by the Louisiana State Law Institute (the Law Institute). Act No. 1 of the 2008 Second Extraordinary Session provided the following language:

> "(x) For purposes of the sales and use tax imposed by the state . . . the terms 'retail sale' or 'sale at retail' shall not include the sale or purchase by a ~~consumer~~ person of any fuel or gas, including but not limited to butane and propane, ~~for residential use~~."

Act No. 1 was signed by the Governor on March 24, 2008 and had an effective date of July 1, 2008. The terms which were struck through were removed from the statute by Act No. 1, and the terms which were underlined were added to the statute by Act No. 1.

Act No. 9 of the 2008 Second Extraordinary Session was also signed by the Governor on March 24, 2008 and had an effective date of July 1, 2008. It provided the following language:

> (x) For purposes of the sales and use tax imposed by the state . . . the terms "retail sale" or "sale at retail" shall not include the <u>following</u>:

4

> i.    <u>The</u> sale or purchase by a consumer of any fuel or gas, including but not limited to butane and propane, for residential use by the consumer.
>
> ii.    <u>Beginning July 1, 2008, the sale or purchase by any person of butane and propane.</u>

As shown above, Act No. 9 restated and adopted all of the pre-2008 version of the statute and also expanded the exclusion to include all purchases of butane and propane by any person. Act No. 1 excluded from the definition of "retail sale" or "sale at retail" all purchases by "any **person** of any fuel or gas, including but not limited to butane and propane." 2008 La. Acts No. 1, §1 (Emphasis added.) Act No. 9 excluded from the definition of "retail sale" or "sale at retail" all purchases by "a **consumer** of any fuel or gas, including but not limited to butane and propane, which is purchased **for residential use by the consumer**." 2008 La. Acts No. 9, §1 (Emphasis added.) Act No. 9 also excluded all purchases by any person of butane and propane beginning July 1, 2008.

In contrast, the published version of La.R.S. 47:301(10)(x), during all times pertinent here, provided as follows:

> For purposes of the sale and use tax imposed by the state . . . the term 'retail sale' or 'sale at retail' shall not include the following:
>
> (i)    The sale or purchase by a person of any fuel or gas, including but not limited to butane and propane.
>
> (ii)    Beginning July 1, 2008, the sale or purchase by any person of butane and propane.

A review of the published version of the statute confirms that the Law Institute completely deleted subpart (i) of Act No. 9 and replaced it with the text of Act No. 1 and kept subpart (ii) of Act No. 9. O'Neal argues that this revision means that the Law Institute found no conflict between the acts. O'Neal further asserts that the Law Institute's finding should be given deference pursuant to Louisiana jurisprudence, which states:

5

> "A reviewing court should afford considerable weight to an administrative agency's construction and interpretation of its rules and regulations adopted under a statutory scheme that the agency is entrusted to administer, and its construction and interpretation should control unless they are found to be arbitrary, capricious, or manifestly contrary to its rules and regulations."

*Delahoussaye v. Bd. of Supervisors of Cmty. and Tech. Colls.*, 04-515, p.5 (La.App. 1 Cir. 3/24/05), 906 So.2d 646, 649.

As previously noted, statutory interpretation is a question of law and is reviewed de novo. Therefore, no deference is allotted to a lower court's or agency's interpretation. However, even if deference were owed, we find that the Law Institute is not the appropriate administrative agency to which it would be owed under the facts at hand.

As noted by LDR, the Law Institute is not the legislature, and it does not have the authority to make or interpret the law. The text published by the Law Institute does not represent either the prior version of La.R.S. 47:301(10)(x), the amendments made by Act No. 1, or the amendments made by Act No. 9. The printed, published version is a combination and attempted harmonization of the acts that was unauthorized by the Louisiana Legislature. The Law Institute is granted the duty to publish the text of all new legislation of a general and public nature, assigning to these laws an appropriate Title, Chapter, and Section number and indicating the source of the legislative acts from which they are taken. La.R.S. 24:252(A). It is not entrusted to interpret the acts of the legislature or make decisions regarding which portions of an act to publish and/or omit. Its authority is limited to such actions as renumbering and rearranging sections and section parts, inserting or rewording headnotes, and correcting reference numbers. *Id*. The Law Institute is not permitted to alter the sense, meaning or effect of any act of the legislature. La.R.S. 24:253. It is the Louisiana Department of Revenue that is tasked with administering and enforcing tax laws enacted by the legislature.

6

Louisiana Revised Statutes 36:451(B) specifically states that the Louisiana Department of Revenue "shall be responsible for assessing, evaluating, and collecting the consumer, producer, and any other state taxes specifically assigned by law to the department."

If a conflict between two or more legislative acts affecting the same subject matter in the same provision of law occurs and cannot be resolved, the Law Institute is required to notify the secretary of the Senate and the clerk of the House of Representatives prior to preparing the printer's copy. La.R.S. 24:252(B). Rather than complying with the provisions of La.R.S. 24:252(B), the Law Institute attempted to merge the two acts. In doing so, the Law Institute omitted a large portion of the last enacted act, Act No. 9, and as a result, the published version of La.R.S. 47:301(10)(x), at all times pertinent, did not reflect the Louisiana Legislature's last expression of legislative will.

"Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the intent of the statute." *Downs v. J. & J. Maint., Inc.*, 97-511, p.8 (La.App. 3 Cir. 10/8/97), 702 So.2d 845, 850, *writ denied*, 97-2848 (La. 1/30/98), 709 So.2d 715. The rules of statutory construction applicable in this case are those pertinent to conflicting legislative acts and to repeal by implication. Louisiana Civil Code Article 8 provides, "Laws are repealed, either entirely or partially, by other laws. A repeal may be express or implied . . . It is implied when the new law contains provisions that are contrary to, or irreconcilable with, those of the former law." Therefore, when a legislature enacts a statute without mention of existing statutes on the same subject matter, the later act may, by necessary implication, effect the repeal of the preexisting law. *State v. Piazza*, 596 So.2d 817 (La.1992).

7

It must be noted that such a repeal by implication is not favored in Louisiana law. *Bebop's Ice House, Inc. v. City of Sulphur*, 00-602 (La.App. 3 Cir. 12/6/00), 774 So.2d 369. This is based on the presumption that when the legislature enacts new legislation, it envisions the whole body of law, and all acts on a single subject should be construed so as to give effect to both whenever possible. *Piazza*, 596 So.2d 817. However, when two acts are clearly irreconcilable, are clearly repugnant as to essential matters relating to the acts, and are so inconsistent that the two cannot have concurrent operation, then the presumption against implied repeal falls, and the later statute governs. *Id.* at 819. Further, Louisiana jurisprudence is clear that "where the obvious purpose of the law is to cover the whole subject matter therein dealt with, it supersedes all prior pertinent legislation." *St. Julian*, 61 So.2d at 466; *State v. Tate*, 185 La. 1006, 171 So. 108 (1936).

In the present case, both acts in question were passed in the same legislative session, but evidence in the record establishes that Act No. 9 was passed later in time than Act No. 1. Both were intended to amend the same statute. The question, therefore, is whether the two arguably conflicting statutes can be reconciled consistent with legislative intent.

> [W]hen inconsistent amendments to the same statute have been adopted at the same legislative session, the court should attempt to construe the statute so as to give effect to both amendments consistent with legislative intent. Only when it is impossible to give effect to both amendments should the court allow the time of passage of the acts to be the controlling factor. Allowing the later act to control effectively recognizes a repeal by implication of the earlier act, and such recognition of a repeal by implication should occur only when the acts passed in the same session are so repugnant that they cannot stand together.

*Piazza*, 596 So.2d at 819.

O'Neal argues that the two acts can be read together and harmonized, as done by the Law Institute in this case, and that the Board erred when it found the

two acts in conflict and that Act No. 9 had tacitly repealed Act No. 1. However, the Law Institute was forced to delete a large portion, the entirety of subpart (i), of Act No. 9 in its attempts to merge the two acts. As the Board noted, the plain wording of the Law Institute's version of La.R.S. 47:301(10)(x) makes La.R.S. 47:301(10)(x)(ii), which exempts the purchase of butane and propane by any person, superfluous and unnecessary since La.R.S. 47:301(10)(x)(i) exempts such purchase in any event as it excludes the sale or purchase of any gas for any purpose. Further, the very fact that O'Neal's purchases of welding fuel are either taxable or non-taxable depending upon whether Act No. 1 or Act No. 9 applies is evidence that the two acts are in conflict and cannot be harmonized.

O'Neal asserts that the Board did not consider whether Act No. 1 and Act No. 9 could be reconciled, but a review of the Board's written reasons for judgment shows otherwise. The Board clearly viewed the two individual acts and found them to be in direct conflict. It notes LDR's argument that the distinction between "residential" use found in Act No. 9 and all uses implied in Act No. 1 constitutes a real conflict, and the Board agreed. As specifically stated in its reasons for judgment regarding the taxability of O'Neal's purchases, "[t]his dichotomy of tax treatment resulting from the separate application of Acts 1 and 9 to the facts of this case *ipso facto* creates a conflict between these two acts." The Board further elaborates in a footnote to its written reasons, "The text limiting the broader exemption to residential uses by a consumer (which was deleted by Act 1) was explicitly retained in the re-enactment of Act 9; this also creates a direct textual conflict that can only be resolved by ascertaining the last expression of legislative will." It is clear the Board considered the two acts and found them to be plainly irreconcilable. We agree. Act No. 1 and Act No. 9 cannot be harmonized

9

to give effect to both consistent with legislative intent, and accordingly, the later act impliedly repealed its predecessor. *Piazza*, 596 So.2d 817.

O'Neal argues further that LDR did nothing to correct the apparent conflict between the acts or the Law Institute's version until a taxpayer claimed a refund some nine years later. However, this allegation is directly refuted by Revenue Information Bulletin No. 08-022, which was published on July 21, 2008 and admitted into evidence. This Bulletin, published by LDR, attempted to resolve the conflict between Act No. 1 and Act No. 9, stating, "since Act 9 was the last expression of Legislative will during the Second Extraordinary Legislative Session, the amendments to La.R.S. 47:301(10)(x) by Act 9 are controlling and supersede the amendments to the same statute by Act 1." Moreover, testimony in the record establishes that welding gases, such as those at issue, have been taxed by LDR consistently at all times pertinent. It is clear that LDR did not suddenly change its opinion after O'Neal filed for a refund, but rather has maintained its current position with respect to Act No. 1 and Act No. 9 since their enactment.

O'Neal next argues that the Board's ruling must be reversed because it causes internal inconsistency as it renders superfluous 2017 La. Acts No. 424, §1, which amended La.R.S. 47:301(10)(x) to conform to the language of Act No. 9 of the 2008 Second Extraordinary Session. O'Neal asserts that courts should give effect to all parts of a statute when interpreting it and should not give a statute an interpretation that makes any part superfluous or meaningless, citing *Bridges v. Bullock*, 48,231 (La.App. 2 Cir. 9/25/13), 124 So.3d 1171. However, O'Neal's argument appears to ignore that the Louisiana Legislature amended La.R.S. 47:301 in 2016. It did so by restating the entirety of La.R.S. 47:301(10)(x) in its published, though incorrect, form. This restatement of the published version expanded the tax exclusion found in La.R.S. 47:301(10)(x) from the previous act,

Act No. 9. To remedy this oversight, the legislature introduced Act No. 424 in 2017, which would make La.R.S. 47:301(10)(x) conform again to the language of Act No. 9. The law in Louisiana was changed in 2016 by the restatement of La.R.S. 47:301 by the legislature to include the published version of the statute. Act No. 424 was therefore necessary in order to amend the statute to once again limit the pertinent exclusion to "[t]he sale or purchase by a consumer of any fuel or gas, including but not limited to, butane and propane, **for residential use by the consumer.**" 2017 La. Acts No. 424, §1 (Emphasis added.) Accordingly, we find this argument without merit.

Finally, O'Neal attempts to argue that the law is ambiguous, and that it is, therefore, entitled to have any ambiguity resolved in its favor as the taxpayer. However, O'Neal has failed to show how the text of either Act No. 1 or Act No. 9 is ambiguous. The fact that this court must determine which act controls is not evidence of ambiguity, but conflict. As the Board noted in its reasons for ruling:

> Not only have the Petitioners failed to carry their burden of proof on this issue, the Secretary has established by a preponderance of the evidence that [Act No. 9] is the last expression of legislative will, and therefore Act 9 controls. Act 9 is also the later enactment of law concerning the matter (being signed into law after Act 1).

A reading of the rules governing statutory construction makes apparent that where acts are in direct conflict, the rule that the last in order of position will prevail must be applied. *St. Julian*, 61 So.2d 464. "There is no other reasonable rule that could be applied to conflicting statutes passed at the same session of the legislature than to hold that the later expression of the legislative will must govern." *Id*. at 466. Based upon a thorough reading of the plain wording of the two acts, we find them to be in conflict. We, therefore, conclude that the last expression of the legislative will, Act No. 9, impliedly repealed Act No. 1.

11

## DISPOSITION

For the reasons assigned, the judgment of the Board of Tax Appeals is affirmed, and O'Neal Steel Louisiana, LLC's refund claim for $3,423.33 is dismissed. All costs of this appeal are assessed to O'Neal Steel Louisiana, LLC.

**AFFIRMED.**