# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2019 CA 0814

## JAMES ROBERT WILBER AND RACHEL SEALS WILBER

### VERSUS

## PROGRESSIVE PALOVERDE INSURANCE COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND BROOKE PAIGE TYLER

**Judgment Rendered:**   FEB 2 1 2020

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. C657630, Sec. 22

Honorable Timothy E. Kelley, Judge Presiding

* * * * * *

| | |
|---|---|
| Michael L. Hebert<br>Baton Rouge, Louisiana | Counsel for Plaintiffs/Appellants,<br>James Robert Wilber and<br>Rachel Seals Wilber |
| | |
| Tucker F. Giles<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee,<br>State Farm Mutual Automobile<br>Insurance Company |

* * * * * *

## BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1] The Honorable William J. Burris, retired, is serving as judge *pro tempore* by special appointment of the Louisiana Supreme Court.

**BURRIS, J.**

This case arises out of a car accident that occurred in November 2016 and involves a discrepancy between 1999 La. Acts, No. 732, as enacted by the legislature, amending La. R.S. 22:1406, the uninsured/underinsured ("UM") motorist statute in effect at the time, and the published version of this statute, as revised by the Louisiana State Law Institute. Under Act 732, the UM coverage rejection form signed by James Wilber, plaintiff, in June 1999 became invalid upon the next policy renewal after August 15, 1999, the effective date of Act 732. Conversely, if the published version of La. R.S. 22:1406 controls, the form signed by Mr. Wilber is valid, and no coverage exists under the policy of auto insurance issued by State Farm Mutual Automobile Insurance Company to the Wilbers.

The trial court held that the published version of La. R.S. 22:1406, as revised by the Law Institute, controls and granted the motion for summary judgment filed by State Farm, dismissing the plaintiffs' suit with prejudice. In this appeal, the plaintiffs seek review of this judgment, asserting that Act 732 must prevail and, thus, the trial court erred in granting State Farm's motion for summary judgment. For the following reasons, we reverse the judgment and remand the matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

James Wilber was involved in a car accident with Brooke Tyler on November 1, 2016. Mr. Wilber and his wife, Rachel Seals Wilber, filed suit against Brooke and her insurer, Progressive Paloverde Insurance Company, in May 2017, seeking damages for injuries Mr. Wilber allegedly sustained in the accident. The Wilbers also named their UM insurer, State Farm, as a defendant. The Wilbers settled their claims against Ms. Tyler and Progressive and dismissed these parties from the suit in January 2019, reserving their claims against State Farm.

2

State Farm filed a motion for summary judgment in October 2018 to dismiss the plaintiffs' claims, asserting the Wilbers' auto policy does not provide UM coverage. State Farm produced a State of Louisiana Uninsured/Underinsured Motorist Bodily Injury Coverage Form signed by Mr. Wilber on June 9, 1999, wherein Mr. Wilber rejected UM coverage. State Farm maintains that this waiver applies to the auto policy in effect on the date of the subject accident (with a policy period of May 2, 2016 to November 2, 2016). The Wilbers opposed the motion, asserting the waiver is not valid. The plaintiffs do not contend that Mr. Wilber did not sign the form or that the waiver does not apply to the subject auto policy. Instead, they assert that State Farm was required to obtain a new UM rejection form upon the next policy renewal after August 15, 1999, the effective date of Act 732, the 1999 amendment to La. R.S. 22:1406.

A hearing on State Farm's motion for summary judgment took place on January 28, 2019. At the conclusion of the hearing, the trial court granted State Farm's motion, finding the waiver signed by Mr. Wilber was valid and enforceable. A written judgment was signed on February 25, 2019, dismissing the plaintiffs' suit with prejudice. From this judgment, the plaintiffs filed the instant appeal, identifying one assignment of error: the trial court erred by granting State Farm's motion for summary judgment because, "By the clear wording of LSA-R.S. 22:1406(D)(1)(a), as amended by Act 732 of 1999, it was mandatory that State Farm have Mr. Wilber sign a new UM waiver, after August 15, 1999." Because this was not done, the Wilbers maintain that "the UM waiver was invalid and UM coverage is provided by law."

## APPLICABLE LAW

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3) The issue of whether an insurance policy, as a matter of

3

law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. **Draayer v. Allen**, 2015-1150 (La. App. 1st Cir. 4/15/16), 195 So.3d 78, 81, citing **Green v. State Farm Mutual Automobile Insurance Company**, 2007-0094 (La. App. 1st Cir. 11/2/07), 978 So.2d 912, 914, writ denied, 2008-0074 (La. 3/7/08), 977 So.2d 917. As an insurer seeking to avoid coverage through summary judgment, State Farm bore the burden of proving that some provision or exclusion applies to preclude coverage. **Draayer**, 195 So.3d at 81, citing **Halphen v. Borja**, 2006-1465 (La. App. 1st Cir. 5/4/07), 961 So.2d 1201, 1204, writ denied, 2007-1198 (La. 9/21/07), 964 So.2d 338.

**Legislative History:**

In 1997, the legislature enacted the "Omnibus Premium Reduction Act of 1997" which, among other things, amended and reenacted La. R.S. 22:1406(D)(1)(a) concerning uninsured motorist coverage. See 1997 La. Acts, No. 1476. The Omnibus Premium Reduction Act authorized the issuance of "economic only" UM coverage and provided that a rejection of UM coverage must be made on a form prescribed by the commissioner of insurance. Specifically, La. R.S. 22:1406(D)(1)(a)(ii) provided:

> After September 1, 1987, such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. Any form executed **prior to the effective date of this Act** shall be valid only until the policy renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection. (Emphasis added.)

4

This provision was amended again by 1999 La. Acts, No. 732 to provide, among other things, that a UM rejection form shall be valid for the life of the policy.[2] Act 732 of 1999 stated:

> After September 1, 1987, such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Subsection, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer. Any form executed **prior to the effective date of this Act** shall be valid only until the policy renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection. (Emphasis added).

The effective date of Act 732 was August 15, 1999. Critically, after Act 732 was enacted, but before it was published, the Law Institute replaced "the effective date of this Act" with "September 6, 1998." Therefore, the published, publically available version of La. R.S. 22:1406(D)(1)(a)(ii) pertinently states:

***

---

[2] Subsection D of La. R.S. 22:1406, as amended by Acts 2003, No. 456, §§ 1 and 2, was redesignated as La. R.S. 22:680 by § 3 of Acts 2003, No. 456 and pursuant to the authority granted to the Louisiana Law Institute by La. R.S. 24:253. La. R.S. 22:680 was subsequently renumbered to La. RS. 22:1295, the current uninsured motorist statute, by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009.

Any form executed **prior to September 6, 1998** shall be valid only until the policy renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection. (Emphasis added.)

Since Mr. Wilber's rejection form was signed in June 1999, before the effective date of Act 732 in August 1999, State Farm was required to obtain a new UM rejection from Mr. Wilber if the enacted version of La. R.S. 22:1406(D)(1)(a)(ii), as it appears in Act 732, prevails. Conversely, if the published version of this provision controls, then the waiver signed by Mr. Wilber is valid and bars UM coverage, because it was signed prior to September 6, 1998. Thus, the issue presented in this appeal is whether the text of Act 732, as drafted and enacted by the legislature, must prevail over the revisions made by the Law Institute.

**Authority of the Louisiana State Law Institute**

The Law Institute, created by legislative act in 1938, is an organization within the legislative branch of government. § 5:3.Preparation of Printer's Copy by the Louisiana State Law Institute, 20 La. Civ. L. Treatise (2019 ed.). As the "official advisory law revision commission of the State of Louisiana," the Law Institute is charged with directing and supervising "the continuous revision, clarification and co-ordination of the Louisiana Revised Statutes in a manner not inconsistent with the provisions of this Chapter." La. R.S. 24:251. The Law Institute also conducts research, prepares advisory reports, and recommends legislation to the legislature. §5:3.Preparation of Printer's Copy by the Louisiana State Law Institute, 20 La. Civ. L. Treatise (2019 ed.).

The Law Institute's primary duties are set forth in La. R.S. 24:252(A), which provides:

At the close of each legislative session the Louisiana State Law Institute shall prepare printer's copy, either for a supplement to the Revised Statutes of 1950, or for a volume to be called "Louisiana Revised Statutes", containing the text of the Louisiana Revised Statutes of 1950 as they may have been amended, and omitting

therefrom or noting therein, those sections that have been repealed. There shall also be incorporated therein, in an appropriate place and classification, the text of all the new legislation of a general and public nature, assigning to these laws an appropriate Title, Chapter, and Section number, and indicating the source of the legislative acts from which they are taken.[3]

\*\*\*

The printer's copy prepared by the Law Institute is a supplement to the Louisiana Revised Statutes of 1950, the Louisiana Code of Civil Procedure, the Louisiana Code of Criminal Procedure, the Civil Code of the State of Louisiana, the Louisiana Code of Evidence, and the Louisiana Constitution of 1974. The printer's copy is submitted to the secretary of the Senate and the clerk of the House of Representatives at the time it is transmitted to the printer. La. R.S. 24:253.2. The printer's copy is also delivered to the Secretary of State, who is responsible for publication and distribution. La. R.S. 24:254; see also La. Const. art. IV, §7; §5:2.Publication of laws, 20 La. Civ. L. Treatise (2019 ed.).

The Law Institute's authority to change enacted legislation is limited by La. R.S. 24:253, which provides:

> In preparing the printer's copy provided for in R.S. 24:252, the Louisiana State Law Institute **shall not alter the sense, meaning or effect of any act of the legislature,** but it may:
> (1) Renumber and rearrange sections or parts of sections;
> (2) Transfer sections or divide sections so as to give to distinct subject matters a separate section number, but without changing the meaning;
> (3) Insert or change the wording of headnotes;
> (4) Change reference numbers to agree with renumbered chapters or sections;
> (5) Substitute the proper section or chapter number for the terms "this act", "the preceding section" and the like;
> (6) Strike out figures where they are merely a repetition of written words and vice-versa;
> (7) Change capitalization for the purpose of uniformity;
> (8) Correct manifest typographical and grammatical errors, and
> (9) Make any other purely formal or clerical changes in keeping with the purpose of the revision.

---

[3] Per La. R.S. 24:252(B), the Law Institute must notify the Senate and the House of Representatives if a conflict exists between two or more legislative acts affecting the same subject matter in the same provision of law, which cannot be resolved for the purpose of incorporating the text into the Revised Statutes.

The Institute shall omit all titles of acts, all enacting, resolving, and repealing clauses, all appropriation measures, all temporary statutes, all declarations of emergency, and all validity, declaration of policy, and construction clauses, except when the retention thereof is necessary to preserve the full meaning and intent of the law. Whenever any validity, declaration of policy, or construction clause is omitted, proper notation of the omission shall be made. (Emphasis added.)

When the Law Institute acts within its statutory grant of authority, as is most often the case, no conflict exists and the statute is interpreted and enforced as published. For instance, see **Wallace v. LeBlanc**, 2017-1551 (La. App. 1st Cir. 6/21/18), 255 So.3d 613, 616, n. 6, writ denied, 2018-1322 (La. 5/28/19), 273 So.3d 312, noting that 1987 La. Acts, No. 848, §1 added La. R.S. 15:571.14(8); however, paragraph (8) was redesignated as paragraph (10) by the Law Institute on authority of La. R.S. 24:253.

State Farm characterizes the Law Institute's revision of Act 732 as a "clerical change" made pursuant to the authority of La. R.S. 24:253 in order to fulfill the intent of the legislature. According to State Farm, the phrase "prior to the effective date of this Act" included in Act 732 was a "carry-over" from the 1997 version of La. R.S. 22:1406, and the "legislature inadvertently overlooked the consequences of reenacting prior language." State Farm maintains that the legislature did not intend for Act 732 to invalidate UM rejection forms signed after the 1997 revision to La. R.S. 22:1406. Therefore, State Farm argues that, pursuant to the authority granted to it by La. R.S. 24:253, the Law Institute "made [the] clerical substitution at issue in keeping with the purpose of Act 1476 of 1997 and Act 732 of 1999." Consequently, State Farm asserts the language of Act 732 relied on by the Wilbers was "never the law."

We do not agree with State Farm that the Law Institute's revision of Act 732 was merely a "clerical change." Instead, we find the Law Institute materially altered the meaning and effect of Act 732 by substituting "Any form executed prior to the effective date of this Act..." with "Any form executed prior to

8

September 6, 1998..." The substantial consequences of the Law Institute's revision are evidenced by the starkly different outcomes that will result, depending on which post-August 1999 version of La. R.S. 22:1406 is enforced, i.e., the statute as enacted or as published.

State Farm's argument regarding the Law Institute's search for and fulfillment of legislative intent is likewise unpersuasive.[4] The Law Institute is not entrusted to interpret the acts of the legislature or make decisions regarding which portions of an act to publish and/or omit. **Metals USA Plates & Shapes Southeast, Inc. v. Louisiana Department of Revenue**, 2017-699 (La. App. 3d Cir. 3/21/18), 240 So.3d 1016, 1021, writ denied, 2018-0635 (La. 8/31/18), 251 So.3d 412. Instead, the function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. **M.J. Farms, Limited v. Exxon Mobil Corp.**, 2007-2371 (La. 7/1/08), 998 So.2d 16, 26, amended on reh'g (9/19/2008), citing **Theriot v. Midland Risk Ins. Co.**, 95-2895 (La. 5/20/97), 694 So.2d 184, 186. The Law Institute has "no power whatever to change any law..." **City of Alexandria v. La Combe**, 220 La. 618, 627, 57 So.2d 206, 209 (La. 1952).[5]

Furthermore, it must be presumed that a legislature says in a statute what it means and means in a statute what it says. **State v. Williams**, 2010-1514 (La. 3/15/11), 60 So.3d 1189, 1192 (per curiam), citing **Connecticut National Bank v. Germain**, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992). It cannot be assumed, then, that the legislature inadvertently failed

---

[4] Louisiana Revised Statute 24:253(9) permits the Law Institute to make "purely formal or clerical changes in keeping with the purpose of the revision." However, this authority to consider the "purpose of the revision" does not extend to allow the Law Institute to change the substance of the law to satisfy what it perceives to be the legislature's intent. See La. R.S. 24:253; **Metals USA Plates & Shapes Southeast, Inc.**, 240 So.3d at 1021.

[5] In **City of Alexandria**, 57 So.2d at 209, the Law Institute's changes appeared in its report to the legislature prior to the enactment of the Louisiana Revised Statutes of 1950. The Louisiana Supreme Court found that the legislature adopted the changes when it enacted the Louisiana Revised Statutes of 1950; thus, the statues as amended by the Law Institute became the law of the state.

to change "Any form executed prior to the effective date of this Act..." to "Any form executed prior to September 6, 1998..." when it passed Act 732. This is particularly true considering the legislature removed the language added by the Law Institute when it amended and reenacted La. R.S. 22:1406(D)(1)(a)(ii) in 2003. See 2003 La. Acts, No. 456, eff. August 15, 2003.

**Application of 1999 La. Acts No., 732**

Because we find the Law Institute exceeded the authority granted to it by La. R.S. 24:253, we must next determine whether Act 732 or the published version of La. R.S. 22:1406 controls. For the answer, we look to the Louisiana Supreme Court's decision in **State v. St. Romain**, 292 So.2d 531, 534 (La. 1974), wherein the court concluded that, in the event of a substantive conflict between the legislation as enacted and as published, the language of the enrolled bill is controlling. See also § 5:3.Preparation of Printer's Copy by the Louisiana State Law Institute, 20 La. Civ. L. Treatise, n. 11 (2019 ed.).

In **St. Romain**, the defendants were charged with violating La. R.S. 40:966(A), distribution of marijuana. **Id.** at 532. The State and the trial court disagreed regarding whether the offense was a misdemeanor or a felony. The trial court concluded it was a misdemeanor, finding that La. R.S. 40:966, subsection B(2), the felony penalty provision for distribution of marijuana, was removed from the law by the passage of 1973 La. Acts, No. 207. **Id.** The enrolled bill, approved by both houses of the legislature and signed by the governor, contained three asterisks between subsection B(1) and subsection C, where subsection B(2) appeared. **Id.** at 533. When used, astericks denote those parts of the section or subsection not being amended or reenacted. **Id.** at 534, n. 3 (citation omitted). However, the Secretary of State published the act without the three asterisks between subsection B(1) and subsection C, thus, making it appear that subsection B(2) was omitted from the law. This version of the bill was published in the Official State Journal and bound in the acts of 1973.

**Id**. 533-4. The question before the Supreme Court was whether the trial court correctly determined that subsection B(2) was deleted or repealed from the law. **Id**. at 534.

The Supreme Court was presented with the *res nova* issue of which should prevail in the event of conflict between a bill as enrolled and as promulgated. The **St. Romain** court held:

> We conclude that the only logical and rational answer is that the enrolled bill or the bill as passed by both houses of the Legislature and signed into law by the Governor is the version which prevails. This we feel is supported by a proper construction of Article 3 Section 27 of the Constitution of 1921 and it is supported by other jurisprudence in this country.

> **Id**. citing **Carlton v. Grimes**, 237 Iowa 912, 23 N.W.2d 883 (1946)

(remaining citations omitted).

Article 3, Section 27 of the Louisiana Constitution of 1921 provided that enacted laws shall go into effect at noon on the twentieth day after the Legislature has adjourned and that all Acts shall be published without delay after passage. The **St. Romain** court reasoned that the practical effect of this provision is that the laws are in effect prior to publication. "The version that may then be said to be in effect is the enrolled bill." **Id**. at 534, n. 2. Similarly, Article 3, Section 19 of the Louisiana Constitution of 1974 states:

> All laws enacted during a regular session of the legislature shall take effect on August first of the calendar year in which the regular session is held and all laws enacted during an extraordinary session of the legislature shall take effect on the sixtieth day after final adjournment of the extraordinary session in which they were enacted. All laws shall be published prior thereto in the official journal of the state as provided by law. *However, any bill may specify an earlier or later effective date.* (Emphasis added.)

This court has found that, in adopting Article 3, Section 19, the delegates to the Constitutional Convention of 1973 "intended no substantive change from that language found in Article 3, Section 27 of the Louisiana Constitution of 1921. Thus, in certain instances, it is possible for a legislative act to be effective prior to its publication." **Jones v. State**, 336 So.2d 59, 62 (La. App. 1st Cir.

1976), writ denied, 336 So.2d 515 (La. 1976), citing **St. Romain**, 292 So.2d 531.

Thus, we are constrained by the holding of **St. Romain** to find that Act 732, as enrolled, rather than La. R.S. 22:1406, as revised by the Law Institute and published by the Secretary of State in 1999, controls the instant dispute. Because Act 732 provides that a UM rejection form executed "prior to the effective date of this Act" – August 15, 1999 – shall be valid only until the policy renewal date, Mr. Wilber's UM rejection signed in June 1999 ceased to be valid upon the next policy renewal date. The summary judgment evidence establishes that the Wilbers' auto policy renewed at least once, on November 2, 2009; therefore, the June 1999 waiver was not valid at the time of the November 2016 accident. Thus, we conclude that the trial court erred by granting State Farm's motion for summary judgment.

Our holding today is consistent with the decision reached by the Second Circuit in **Stewart v. Hare**, 42,972 (La. App. 2d Cir. 2/20/08), 976 So.2d 856, writ denied, 2008-0621 (La. 5/16/08), 980 So.2d 709. There, the court considered the same issue presented in the instant appeal and declined to enforce La. R.S. 22:1406 as published in 1999. Instead, the court concluded that Act 732 clearly and unambiguously provides that new UM rejection forms must be executed after the Act's effective date of August 15, 1999. **Id**. at 858. "The clear and express language of the Act controls." **Id**. Therefore, the UM rejection form signed by the plaintiff, Stewart, in November 1998, prior to the effective date of Act 732, was not effective in waiving coverage. **Id**.

Further, the result reached herein is in accordance with Louisiana's strong public policy favoring UM coverage, aimed at providing full recovery for innocent auto accident victims who suffer damages caused by a tortfeasor who has no coverage or is not adequately covered by liability insurance. **Bernard v. Ellis**, 2011-2377 (La. 7/2/12), 111 So.3d 995, 1002. "The underlying purpose of

uninsured motorist coverage 'is to promote and effectuate complete reparation, no more or no less'." **Id**. at 1002-3, <u>quoting</u> **Cutsinger v. Redfern**, 2008-2607 (La. 5/22/09), 12 So.3d 945, 949 (remaining citations omitted). To carry out the objective of providing reparation for persons injured through no fault of their own, the statute is liberally construed. **Id**. at 1003. Any exclusion in uninsured motorist coverage must be clear and unmistakable. **Id**. <u>See also</u> **Croker v. Reliance National Indemnity Co.**, 2000-0474 (La. App. 1st Cir. 5/11/01), 800 So.2d 4, 9.

## CONCLUSION

For the foregoing reasons, the judgment granting State Farm Mutual Automobile Insurance Company's motion for summary judgment is reversed, and the case is remanded to the trial court for further proceedings. Costs of this appeal are assessed against appellee, State Farm Mutual Automobile Insurance Company.

**REVERSED AND REMANDED.**